OPINION
{¶ 1} Defendant-appellant Terry Page appeals his conviction entered by the Licking County Court of Common Pleas, on one count of felony abusing harmful intoxicants, in violation of R.C. 2925.31(A), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On July 23, 2004, the Licking County Grand Jury indicted appellant on the aforementioned charge. Appellant entered a plea of not guilty at his arraignment on August 2, 2004. On October 21, 2004, the scheduled trial date, appellant appeared before the trial court, withdrew his previous plea of not guilty, and entered a plea of no contest to the charge. The trial court accepted appellant's change of plea, found appellant guilty, and ordered a presentence investigation. On November 30, 2004, appellant appeared before the trial court for sentencing. At that time, appellant made an oral motion to withdraw his plea of no contest, which the trial court granted. The trial court reassigned the matter to the trial docket. The trial court memorialized the ruling via Judgment Entry filed November 30, 2004. The judgment entry additionally noted appellant's speedy trial time was tolled "because the delay was occasioned by the act of [appellant]."
 {¶ 3} On January 5, 2005, appellant filed a Motion to Dismiss for Delay of Trial. Therein, appellant stated he was arrested on July 16, 2004, and, according to his PRC officer, appellant was terminated from post-release control on approximately August 15, 2004. Appellant noted his PRC officer never put a holder on him, however, he concedes the jail indicated its records showed a PRC holder on appellant, which was lifted on or about August 15, 2004.[1] On October 21, 2004, appellant entered a plea of no contest to the charge. The trial court scheduled sentencing for November 30, 2004. Appellant explained July 17, 2004, through November, 30, 2004, totals 137 days, during which time he was incarcerated; therefore, the State is charged with 408 days under the triple count provision. Appellant continued, assuming the time between the change of plea and the date of sentencing was tolled because he withdrew his no contest plea on November 30, 2004, the period between November 30, 2004, and January 5, 2005, the date of the filing of the motion to dismiss, totals 36 days. The State thus would be charged with 396 days. Appellant explained either scenario establishes he was not brought to trial within the requisite period of time.
 {¶ 4} In the State's response to appellant's motion to dismiss, the State submitted, at the time of appellant's arrest, there was an adult parole violation holder on appellant. According to jail records, the holder was lifted on August 19, 2004. The State suggested the speedy trial time should be calculated as follows: July 18, 2004, through August 19, 2004, 33 days (1 for 1 credit due to the parole holder); and August 20, 2004, through October 21, 2004, 189 days (63 days at 3 for 1 credit). Accordingly, the State argued it should only be charged with 222 days. The trial court denied appellant's motion to dismiss. The matter proceeded to jury trial on January 24, 2005. The following evidence was adduced at trial.
 {¶ 5} Tina Swint testified while she and her fiancé, William Shadinger, were walking near the Waterworks Dam on Waterworks Road and Horns Hill Road in Newark, Ohio, on July 18, 2004, they observed a man sitting along the tree line in a squatted position, holding something to his face. Although she found this out of the ordinary, she and Shadinger ignored the individual and continued to walk towards the water. A short time later, Shadinger looked over his shoulder and saw the individual trying to get into his car. Shadinger yelled at the man to get away from the car, and he and Swint proceeded toward the vehicle. When they approached appellant, they noticed appellant was staggering, acting like he was out in space. Appellant had a white substance all over his face. Swint and Shadinger went to find a police officer. They ultimately went to the fire department because they could not find a police officer. At the fire department, Swint spoke with a lieutenant and advised him of what had happened at the Waterworks Dam. The lieutenant called the police. Thereafter, Swint and Shadinger returned to the park area. Police were at the scene when they returned and they informed the officers of everything that had happened.
 {¶ 6} William Shadinger likewise testified he and Tina Swint were near the Waterworks Dam on July 18, 2004. Shadinger stated as he and Swint walked toward the water, he noticed appellant sitting by the trees. While he and Swint watched the water, Shadinger turned around and saw appellant by his [Shadinger's] car with his [appellant's] hands on the door handle. Shadinger and Swint returned to the car. Appellant walked by the couple. Shadinger described appellant as looking out of it, and also noticed something white around his face. The couple proceeded to the fire department, where the police were called. The couple returned to the park area and waited for the police to arrive. Shadinger testified he told the officers he was the individual who had called, and walked the officers to the area where appellant had been sitting. In the area, there was a big roll of clear white trash bags and two cans of paint.
 {¶ 7} Patrolman Bell of the Newark Police Department testified he was working the 5:00 p.m. to 3:00 a.m. shift when he was dispatched to the Waterworks Dam to investigate a report of a suspicious male who was attempting to get into another person's car. Upon his arrival at the scene, Patrolman Bell observed appellant walking in an enclosed field near the park. Patrolman Bell approached appellant and instructed appellant to come toward him. The patrolman repeated the request a couple of times before appellant complied. As appellant approached the patrolman, the patrolman observed appellant had something in his hand, which he could tell was some sort of bag. When Patrolman Bell asked appellant what was in his hand, appellant proceeded to ball up the item so the officer could not see it. During the dialogue with appellant, Patrolman Bell noticed appellant seemed like he was under the influence of something. The patrolman observed appellant was having trouble standing still and instructed appellant to sit on the ground. Patrolman Bell noticed a strong odor of paint on or about appellant's person.
 {¶ 8} Patrolman Bell described to the jury how an individual would use a can of spray paint and bag in order to obtain an intoxicating effect from an intoxicant. Patrolman Bell further noted he observed gold paint on appellant's clothing, specifically his shoes. The patrolman asked appellant how long he had been sniffing paint, to which appellant responded it had been awhile. Officer Snelling arrived at the scene. The two officers were discussing the penalty for sniffing paint, when appellant interjected the last time he had been busted for sniffing paint, it had been a felony. Patrolman Bell asked appellant where the paint cans he had been using were located, and appellant advised the officer he had thrown them into a nearby trash can. Patrolman Bell did not locate the paint cans in the trash cans, but subsequently found them near the tree line along with plastic bags after the witnesses informed him where they had originally seen appellant.
 {¶ 9} Patrolman Bell further testified he had experience with people inhaling paint. He noted two cans were retrieved from the location in which the witnesses first observed appellant. The cans contained gold paint. Both cans had a substantial amount of gold paint on them. The patrolman stated he smelled the odor of paint at the location. Upon inspecting what appellant was holding, the patrolman learned it was a plastic bag and it contained gold paint inside of it. The odor of the bag was the same odor emanating from the area in which in which the two cans were found.
 {¶ 10} After hearing all the evidence and deliberations, the jury found appellant guilty of felony abusing harmful intoxicants. The trial court sentenced appellant to an 11 month prison term.
 {¶ 11} It is from this conviction and sentence appellant appeals, raising as error:
 {¶ 12} "I. THE TRIAL COURT ERRED WHEN IT DENIED MR. PAGE'S MOTION TO DISMISS FOR VIOLATION OF HIS RIGHT TO A SPEEDY TRIAL WITHIN THE TIME LIMITS IMPOSED BY SECTION 2945.71 OF THE OHIO REVISED CODE.
 {¶ 13} "II. THE TRIAL COURT ERRED WHEN IT FAILED TO ADEQUATELY STATE THE REASONS FOR THE SUA SPONTE CONTINUANCE IN THE JOURNAL ENTRY OF 11/30/04 THEREBY DENYING MR. PAGE HIS RIGHT TO A SPEEDY TRIAL.
 {¶ 14} "III. THE TRIAL COURT ERRED WHEN IT CONTINUED MR. PAGE'S TRAIL [SIC] BEYOND A RESONABLE [SIC] PERIOD OF TIME DUE TO THE SUA SPONTE MOTION OF THE COURT THEREBY DENYING MR. PAGE HIS RIGHT TO A SPEEDY TRIAL.
 {¶ 15} "IV. THE TRIAL COURT ERRED WHEN IT FAILED TO SET ASIDE THE VERDICT AND ENTER A JUDGMENT OF ACQUITTAL.
 {¶ 16} "V. MR. PAGE'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 17} In his first assignment of error, appellant contends the trial court erred in denying his motion to dismiss based upon a violation of his statutory right to a speedy trial.
 {¶ 18} R.C. 2945.71 provides, in pertinent part:
 {¶ 19} (C) A person against whom a charge of felony is pending:
 {¶ 20} * * *
 {¶ 21} "(2) Shall be brought to trial within two hundred seventy days after the person's arrest.
* * *
 {¶ 22} "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section."
 {¶ 23} Appellant submits 285 days for the purposes of speedy trial time passed between the date of his arrest, July 18, 2004, and the first scheduled trial, October 21, 2004. Appellant explains, excluding the day of arrest, he was confined for 95 days. Although appellant concedes the triple count provision of R.C. 2945.71(E) is inapplicable to a defendant held in jail under a parole holder, appellant maintains the adult parole holder placed on him on July 19, 2004, and released August 19, 2004, was invalid; therefore, the triple count provision applied to those 32 days.
 {¶ 24} The criminal pre-trial checklist filed August 26, 2004, indicates "defendant in on holder." In his Motion to Dismiss for Delay of Trial, appellant concedes, although his parole officer informed him he (the parole officer) had never put a parole holder on appellant, the jail records established the existence of such holder. We find the trial court's indication appellant was in jail on a holder coupled with appellant's admission the jail records showed the existence of a holder is sufficient to toll the time for speedy trial purposes. Accordingly, for the period between July 19, 2004, and August 19, 2004, the State is charged with 32 days. However, once the parole holder was lifted, the remaining 63 days between August 20, 2004, and October 21, 2004, are counted 3 for 1, totaling 189 days. The total charge against the State is 223 days, well within the 270 day limit.
 {¶ 25} Appellant's first assignments of error is overruled.
 II {¶ 26} In his second assignment of error, appellant asserts the trial court erred in failing to adequately state the reasons in its November 30, 2004 Judgment Entry for its sua sponte continuance.
 {¶ 27} "Pursuant to R.C. 2945.72(H) a court may grant a continuance upon its own initiative as long as it is reasonable. This provision has been interpreted to permit courts to sua sponte continue an accuser's trial beyond the time limit prescribed by R.C. 2945.71, but only when reasonable and only when the continuances are made by journal entry prior to the expiration of the time limit." State v. King, 70 Ohio St.3d 158,1994-Ohio-412.
 {¶ 28} The King decision references the Ohio Supreme Court's earlier decision in State v. Mincy (1982), 2 Ohio St.3d 6, wherein the Court stated: "When sua sponte granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefore by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial." Id. at syllabus.
 {¶ 29} Appellant concludes he was denied his right to a speedy trial because the trial court did not set forth sufficient reasons for the sua sponte continuance.
 {¶ 30} In its November 30, 2004 Judgment Entry, the trial court stated: "Upon oral motion of counsel for the defendant, the Court allows the defendant to withdraw his previously entered plea of guilty. The matter shall be set for jury. Because the delay was occasioned by the act of the defendant, speedy trial time is tolled."
 {¶ 31} We note the King and Mincy decisions addressed the issue of sua sponte continuances. Herein, the continuance at issue was the result of the trial court's granting appellant's request to withdraw his no contest plea, i.e., appellant's own actions. As such, we find the trial court was not required to set forth reasons for the continuance. We find, the trial court's use of the phrase "occasioned by the act of the defendant", read in context with the entire paragraph, was accurate and sufficient. The trial court did not violate appellant's right to a speedy trial.
 {¶ 32} Appellant's second assignment of error is overruled.
 III {¶ 33} In his third assignment of error, appellant contends his constitutional right to a speedy trial was denied as a result of the trial court's continuing his trial beyond a reasonable time period. Specifically, appellant maintains the 55 days between the trial court's November 30, 2004 Judgment Entry, journalizing the vacation of appellant's no contest plea, and the January 24, 2005 trial date was unreasonable.
 {¶ 34} When making the determination whether appellant has been denied his right to a speedy trial as guaranteed by the Constitution, we consider four factors: (1) length of delay, (2) reason for the delay, (3) the accused's assertion of the right, and (4) prejudice to the accused.Barker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101. These factors are balanced in a totality of the circumstances setting with no one factor controlling. Id. To trigger this analysis, the defendant first must show the delay was "presumptively prejudicial."
 {¶ 35} We do not find under the totality of the circumstances 55 days to be presumptively prejudicial to appellant. The delay after withdrawal of his no contest plea was not unreasonable.
 {¶ 36} Appellant's third assignment of error is overruled.
 IV, V {¶ 37} Because appellant's fourth and fifth assignments of error are interrelated, we shall address said assignments of error together. Herein, appellant challenges the sufficiency and weight of the evidence. Specifically, appellant takes issue with the evidence in respect to the substance found inside the plastic bag. Appellant submits the evidence failed to establish such substance was a harmful intoxicant.
 {¶ 38} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: AAn appellate court=s function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant=s guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 39} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant=s conviction was based upon insufficient evidence.
 {¶ 40} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine Awhether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses= demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 41} Prior to trial, the State and appellant entered into two stipulations. Stipulation one provided: "the two paint cans marked as State's Exhibit No. 1 are harmful intoxicants pursuant to Section2925.01(I)(1)(a) and/or (b) of the Ohio Revised Code. If it is determined that the plastic bag marked as State's Exhibit No. 2 contains gold paint, it is stipulated that it is also a harmful intoxicant." January 24, 2005 Stipulation.
 {¶ 42} Patrolman Jonathon Bell testified he recovered two cans of gold spray paint from the area. In addition, when the patrolman approached appellant, appellant had a plastic bag crumpled in the palm of his hand. Patrolman Bell, who is trained in dealing with people who abuse harmful intoxicants, including paint, testified in detail how an individual would use a plastic bag and a can of spray paint in order to become intoxicated. Patrolman Bell further testified the odor associated with the two cans of spray paint as well as the odor emanating from the plastic bag were consistent with the smell of paint.
 {¶ 43} In light of this evidence, and the stipulations, we find appellant's conviction was not against the manifest weight of the evidence.
 {¶ 44} Appellant's fourth and fifth assignments of error are overruled.
 {¶ 45} The judgment of the Licking County Court of Common Pleas is affirmed.
Hoffman, J., Gwin, P.J. and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] In his motion, appellant cites incorrect dates for his arrest and the lifting of the parole holder.